NOT FOR PUBLICATION                                                                                  CLOSED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES E. BEST : | Civil Action No. 06-02489 (FSH) |
|       Plaintiff, : | |
| : | **OPINION** |
| vs. : | |
| : | |
| JO ANNE B. BARNHART : | May 7, 2007 |
| COMMISSIONER OF SOCIAL : | |
| SECURITY, : | |
|       Defendant. : | |
| : | |

**HOCHBERG, District Judge:**

This matter is before the Court upon Plaintiff's motion to review a final determination of the Commissioner of Health and Human Services ("Commissioner") pursuant to Section 405(g) of the Social Security Act as amended ("Act"). 42 U.S.C.A. §405(g) (2006). This motion has been reviewed and decided upon the written submissions of the parties pursuant to Fed. R. Civ. P. 78.

**I.      Background.**

Plaintiff, a 53 year-old male with a high school education, fractured his left leg in 1996. (Tr. 73, 98). Plaintiff claims that he could no longer walk as of June 15, 2001 because of pain and arthritis from his injury. (Tr. 62). Accordingly, on August 12, 2002, Plaintiff filed for Disability Insurance Benefits ("DIB") and Supplemental Security Income payments ("SSI"). *Id*. Plaintiff's initial claim and request for reconsideration were denied. (Tr. 25, 32). Plaintiff's request for a hearing by an Administrative Law Judge ("ALJ") was granted and heard before Administrative Law Judge ("ALJ") Gerald J. Ryan on July 21, 2005, after two adjournments.

(Tr. 47, 51, 54).  On September 29, 2005, the ALJ denied Plaintiff's claim.  (Tr. 12).  On March 31, 2006, after considering new x-ray evidence from Plaintiff, the Appeals Council denied Plaintiff's request for review.  (Tr. 7, 10).

Plaintiff worked for 20 years as a printing machine operator.  (Tr. 68).  He was laid off in June 2001 and has not returned to work since.  (Tr. 67).  Plaintiff attributes his absence from work to residual arthritis and a leg fracture in 1996.  (Tr. 62).  After injuring his leg in 1996, Plaintiff was treated at a hospital in North Carolina and received a hard cast.  (Tr. 98).  Doctors at Jersey City Medical Center later recommended surgery to re-break his bone in order to properly correct it, but Plaintiff chose not to have this procedure.  *Id.*  Plaintiff sleeps with his leg elevated to avoid pain, and he testified that his leg gives out when he stands on his bad leg.  (Tr. 88, 161).  Plaintiff also testified, although there is no supporting medical evidence, that he is unable to work because of headaches from a head injury and that he was diagnosed with colon cancer in July 2003.  (Tr. 67, 80, 161-62).

During a consultative examination on April 4, 2003, Dr. Menon, a state agency physician, observed that Plaintiff was in no acute distress, could walk on his heels and toes without difficulty, could squat fully, used no assistance device, did not need help getting on and off the examining table, and was able to rise from a chair without difficulty.  (Tr. 99-100).  Dr. Menon also noted that Plaintiff had full range of motion and no hindrances of his upper extremities or cervical, thoracic and lumbar spines.  (Tr. 99).  Dr. Menon concluded that despite a deformity of his left leg, located three inches above his ankle, Plaintiff maintains a full range of motion of his lower extremities and has no muscle atrophy, sensory abnormality, joint effusion, inflammation, or instability.  (Tr. 99).  Dr. Menon concluded that Plaintiff was able to lift, sit, stand, walk, and

travel with no restrictions in ordinary activities. *Id.* At the July 21, 2003 hearing, Plaintiff further testified that he is able to clean the house, do laundry, make his bed, and take public transportation to the store. (Tr. 165-67).

An April 17, 2003 physical residual functional capacity assessment ("RFC") concluded that Plaintiff has exertional limitations of lifting and/or carrying 50 pounds occasionally and 25 pounds frequently. (Tr. 102). The RFC states that Plaintiff can stand, walk, and sit for about six hours in an eight hour workday; is not limited to push and/or pull activities; and can occasionally engage in activities that involve climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 102-03). The RFC's conclusions were based on evidence that Plaintiff, bearing full weight on his left leg, has a full range of movement in his ankle and other joints and was able to ambulate unassisted. (Tr. 102).

On referral from Dr. Parikh, Plaintiff's treating physician, x-rays of Plaintiff's chest, cervical and lumbosacral spine, upper gastrointestinal tract, small bowel, and gallbladder were taken on two separate occasions. (Tr. 108-09, 110-11). On March 12, 2003, x-rays showed normal chest radiographs, normal cervical spine radiographs, and normal lumbosacral spine radiographs. (Tr. 108-09). On March 20, 2003, a second set of x-rays did not conclusively show an ulceration, but coarsened mucosa[1] suggested antroduodenitis, an inflammation of the small bowel in the upper gastrointestinal tract. (Tr. 110). The x-rays also showed normal small bowel movement and that the gallbladder was normal in size, form, and position. (Tr. 110-11).

During the July 21, 2005 ALJ hearing, Plaintiff stated that he would produce additional records to prove the arthritic condition of his leg. (Tr. 180-83). The ALJ delayed making his

---

[1] Coarsened Mucosa is tissue of poor quality lining particular organs in the body.

decision and kept the record open until August 12, 2005.[2]  (Tr. 183).  Plaintiff never submitted the x-rays.[3]  (Tr. 15).

## II.     Standard of Review for Disability Benefits.

This Court reviews the determination of the Commissioner to assess whether there is substantial evidence supporting the decision.  42 U.S.C. §405(g); *Consol. Edison Co. Of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate."  *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if this Court might have reasonably made a different finding based on the record.  *See Simmonds v. Hecker*, 807 F.2d 54, 58 (3d Cir. 1986).

## III.    Standard for Finding of Disability.

An individual may be entitled to Social Security Benefits upon a finding of disability by demonstrating that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A).  A disabling impairment is defined as

---

[2] After the July 21, 2005 administrative hearing, the ALJ held the record open for an additional 20 days for Plaintiff to submit the recent left leg x-ray.  (Tr. 15, 181-83).

[3] Plaintiff submitted additional x-rays to the Appeals Council for review on December 7, 2005.  (Tr. 144).  The x-rays showed a healed fracture deformity of the distal diaphysis of the left tibia and fibula with a healed over-riding bone formation as well as secondary degenerative changes of the ankle joint.  (Tr. 145).

"an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3) and 1382c(a)(3)(D). An individual will be deemed to be disabled only if the impairment is so severe that she is not only unable to do his previous work but cannot considering his "age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§423 (d)(2)(A) and 1382c(a)(3)(B).

The Commissioner uses the following five-step analysis to determine whether an individual is disabled:

Step One: Substantial Gainful Activity. The Commissioner first considers whether the individual is presently engaged in substantial gainful activity. If so, the individual will be found not disabled without consideration of his medical condition. 20 C.F.R. §§404.1520(a) and 416.920(a).

Step Two: Severe Impairment. If there is no substantial gainful activity, plaintiff must then demonstrate that he suffers from a severe impairment or combination of impairments that significantly limits his ability to perform basic work activities. 20 C.F.R. §§404.1520(c) and 416.920(c).

Step Three: Listed Impairment. If plaintiff demonstrates a severe impairment, the Commissioner will then determine whether the impairment is listed in the regulations set forth at 20 C.F.R. Part 404, Subpt. P or is equivalent of a Listed Impairment. If the individual has such an impairment, the Commissioner will find the individual disabled.

Step Four: Residual Functional Capacity. If the individual does not have a listed

impairment, the fourth step is to determine whether, despite his impairment, the individual has the residual functional capacity to perform his past relevant work. Residual functional capacity is defined as what the claimant can still do despite her limitations. If he does have the capacity to perform past work, the individual will be found not disabled. 20 C.F.R. §§404.1520(e) and 416.920(e).

Step Five: Other Work. Finally, if the individual is unable to perform past work, the Commissioner then considers the individual's residual functional capacity, age, education and past work experience to determine if he is able to perform other work functions. If he cannot do so, the individual will be found disabled. 20 C.F.R. §§404.1520(f) and 416.920(f).

The five-step analysis to determine whether an individual is disabled involves shifting burdens of proof. *Wallace v. Sec'y of HHS*, 722 F.2d 1150, 1153 (3d Cir. 1983). The claimant bears the burden of persuasion through the first four steps; however, if the analysis reaches the fifth step, the Commissioner bears the burden of proving that the claimant is capable of gainful employment other than his past relevant work and that jobs which the claimant can perform exist in substantial numbers in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If there is a finding of disability or non-disability at any point during the review, the Commissioner will not review the claim further. 20 C.F.R. §§404.1520(a) and 416.920(a).

**IV.     Analysis.**

At Step One, the ALJ determined Plaintiff had not performed substantial gainful work since his alleged onset date, when he was laid off on June 15, 2001. At Step Two, the ALJ concluded that Plaintiff's condition after his leg fracture and his hypertension were severe impairments that limited Plaintiff's ability to perform basic work activities. *See* 20 C.F.R.

§§404.1520(a) and 416.920(a). At Step Three, the ALJ held that Plaintiff's impairments did not meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. At Step Four, based on Plaintiff's RFC and the entire record, the ALJ concluded that Plaintiff does not have the residual functional capacity to perform his past relevant work as a printer machine operator because of the lifting and carrying requirements.[4]

At Step Five, the burden shifts to the Commissioner to show that there are other jobs existing in significant numbers in the national economy that Plaintiff can perform, consistent with his RFC, age, education, and work experience. The ALJ determined that Plaintiff's RFC permitted him to engage in "medium" work, which involves lifting up to 50 pounds at a time or frequent lifting or carrying objects up to 25 pounds. The ALJ held that because Plaintiff is capable of medium work, he may also engage in sedentary and light work. The ALJ concluded that Plaintiff is "not disabled" pursuant to Medical-Vocational Rules 203.29 and 203.22 because of medical evidence on the record supporting a finding that Plaintiff can perform a full range of medium work.[5]

Plaintiff argues that: (1) the ALJ violated applicable law in holding that Plaintiff's subjective complaints were not reliable; (2) the ALJ improperly relied on the Medical-Vocational Guidelines (the "Grids") in Step Five because Plaintiff has nonexertional limitations; and (3) the

---

[4] Plaintiff's job as a printer machine operator required him to frequently lift and carry 100 pounds while standing and walking at least six hours. Plaintiff's RFC limits him at most to occasionally lift and carry 50 pounds and to stand and walk for up to six hours.

[5] To determine the physical exertion requirements of work in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy based upon the definitions in the Dictionary of Occupational Titles, which is published by the Department of Labor based upon the guidelines in 20 C.F.R. §§ 404.1567 and 416.967.

Appeals Council erred by denying his request for review.

### A. Plaintiff's Subjective Complaints

The ALJ's decision must be supported by substantial relevant evidence such that "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Pearles*, 401 U.S. 289, 401 (1971). In forming a decision, the ALJ must consider and weigh all medical and non-medical evidence. *Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000). If a Plaintiff complains of pain, the ALJ must "determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999); *see* 20 C.F.R. §404.1529(c). If the credibility of subjective symptoms, such as pain, is inconsistent with objective medical evidence, the ALJ must explain the dismissal of such complaints. *Id*.

Plaintiff argues that the ALJ merely cited evidence and improperly dismissed his complaints of arthritis and headaches in violation of *Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981). *Cotter* holds that an administrative decision should be accompanied by a clear and satisfactory explication of the basis on which it rests, in order for an appellate court to be able to perform its statutory function of judicial review. *Id*. at 704-05. *Cotter* concludes the ALJ is required to give "not only an expression of the evidence he considered which supports the result, but also some indication of the evidence which was rejected." *Id*. at 705. To do so, the ALJ's finding should be comprehensive, analytic, and include subordinate factual findings that support the ultimate factual conclusion. *Id*. at 706. Therefore, under *Cotter*, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence. *See* 20 C.F.R. §§404.1529 and 416.929. However,

20 C.F.R. §404.1508 (2007) states that "[a] physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [Plaintiff's] statements of symptoms." *See e.g., Izzo v. Commissioner of Social Sec.*, WL 1749434 (3d Cir. June 27, 2006) (holding claimant's asthma was not a severe impairment due to no medical signs or findings in the record or treating physician diagnosis); *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (stating subjective complaints of pain must also be corroborated by objective medical evidence).

After considering all medical and non-medical evidence in the record, the ALJ determined that "[Plaintiff's] subjective complaints of disabling pain and other symptoms and limitations precluding all significant work activity...[are] not fully credible."  (Tr. 17).  The ALJ noted that "[d]espite [Plaintiff's] complaints of constant leg pain with the need to elevate the leg...there was no evidence of muscle atrophy and [Plaintiff] needed no help getting on and off the examining table or rising from a chair." (Tr. 17-18).  The ALJ also highlighted that despite Plaintiff's leg deformity, three inches above his left ankle, "Dr. Menon reported that there was a full range of motion of the left leg and no sensory or reflex deficits."  (Tr. 18).  The Court finds that the ALJ satisfied the *Cotter* doctrine by comprehensively explaining why Plaintiff's subjective complaints were not credible.  *See* 20 C.F.R. §404.1529(c)(2) (2007) ("Objective medical evidence...is a useful indicator to assist [the ALJ] in making reasonable conclusions about the intensity and persistence of [the claimant's] symptoms and the effect those symptoms, such as pain, have on [the claimant's] ability to work.").

**B.     Vocational Expert Pursuant to Medical-Vocational Guidelines.**

Plaintiff also argues that the ALJ improperly relied on the Medical-Vocational

Guidelines[6] (the "Grids") in Step Five of his analysis because Plaintiff alleges he has nonexertional limitations, including arthritis, headaches, and postual limitations such as climbing, balancing, stooping, kneeling, crouching, and crawling.[7] When an individual has nonexertional limitations, the ALJ cannot rely solely on the Grids in Step Five and instead must consider the testimony of a vocational expert or other similar evidence, such as learned treatises. *See Poulos v. Commissioner of Social Security*, 474 F.3d 88, 93 (3d Cir. 2007); *Sykes v. Apfel*, 228 F.3d 259 (3d Cir. 2000). Furthermore, "[i]n the absence of evidence in addition to the [grids], the Commissioner cannot establish that there are jobs in the national economy that someone with the [Plaintiff's] combination of impairments can perform." *Id*.

In making an administrative decision on the existence of nonexertional limitations, the ALJ must provide "a clear and satisfactory explication of the basis on which it exists." *Cotter*, 642 F.2d at 704. "[C]ourts cannot exercise their duty of review unless they are advised of the considerations underlying the action under review...[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943). If the ALJ finds

---

[6] Medical-Vocational Guidelines, referred to as "the Grids," dictate a result of "disabled" or "not disabled" according to a combination of vocational factors such as age, education level, work history, and residual functional capacity. The Grids establish, for exertional impairments only, that jobs exist in the national economy which people with those impairments can perform. *Sykes v. Apfel*, 228 F.3d 259, 270 (3d Cir. 2000). The regulations do not purport to establish jobs that exist in the national economy for persons with nonexertional impairments. *Id*. at 269.

[7] A limitation is exertional if it affects the claimant's ability to meet various strength demands of jobs in terms of sitting, standing, walking, lifting, carrying, pushing, and pulling. 20 C.F.R. §404.1569a. A nonexertional impairment is defined as a limitation or restriction imposed by an impairment or related symptom that affects the ability to meet the demands of jobs other than the strength demands. *Id*. at (c).

nonexertional limitations exist, the Grids may only serve as a framework for the ALJ's decision, and the ALJ must call a vocational expert to show that Plaintiff can perform substantial gainful activity even though he suffers from nonexertional impairments. 20 C.F.R. §404.1569a(d); *Mac v. Sullivan*, 811 F.Supp. 194, 198-99 (E.D.Pa. 1993).

In his decision, the ALJ concluded that Plaintiff was capable of performing a full range of medium work and was thus not disabled under 20 C.F.R. pt. 404, Subpt. P, App. 2, §§203.29 and 203.22 (2007).[8] (Tr. 19). Although the ALJ considered the state agency's finding on exertional limitations, the ALJ did not make a specific finding on nonexertional impairments. In a decision, the ALJ may rely on the opinions of state agency medical consultants and other program physicians who are qualified experts in the field of Social Security disability. 20 C.F.R. §§404.1512(b)(6) and (c) and 416.912(b)(6). In his Step Five determination based on the Grids, the ALJ relied on the state agency's findings on exertional limitations but failed to address the state agency's conclusion that Plaintiff has postural limitations and may only occasionally engage in activity that involves climbing, balancing, stooping, kneeling, crouching, and crawling.[9] (Tr.

---

[8] Medium work involves lifting no more than 50 pounds at a time with frequent lifting and/or carrying objects weighing up to 25 pounds. 20 C.F.R. §404.1567(c). Here, the ALJ concurred with the state agency assessment of Plaintiff's exertional limitations in finding that "[Plaintiff] was capable of sitting up to [six] hours in an [eight] hour workday; standing and walking up to [six] hours in an [eight] hour workday; and lifting and carrying up to [twenty-five] pounds frequently and [fifty] pounds occasionally." (Tr. 18, 101-06).

[9] Plaintiff's postural limitations were identified in a physical residual functional capacity assessment prepared by a State agency disability analyst. The state argues that because the assessment was prepared by an analyst, and not a physician or other acceptable medical source, it is not a medical opinion under the Social Security regulations, citing to 20 C.F.R. §404.1513, §416.913, §404.1527(a)(2) and §416.927(a)(2). However, 20 C.F.R. §404.1513(c) states that "At the administrative law judge and Appeals Council levels, we will consider residual functional capacity assessments made by State agency medical and psychological consultants and other program physicians and psychologists to be 'statements about what you can still do' made

102-03). Because "[n]onexertional impairments...involve limitations such as *postural* and manipulative impairments," the ALJ must address Plaintiff's postural limitations since they may rise to nonexertional limitations if they prohibit Plaintiff from performing non-strength demands of a job. *Stunkard v. Sec'y of HHS*, 841 F.2d 57, 60 (3d Cir. 1988) (emphasis added); 20 C.F.R. §404.1545(d); 20 C.F.R. §404.1569a; (Tr. 19). As well, although the ALJ concluded that "evidence is devoid of any diagnosis or evaluation" for headaches as well as arthritis in Plaintiff's left leg (Tr. 18), the administrative decision must be accompanied by a clear and satisfactory explication of reason addressing both the evidence which supports the holding and the evidence an ALJ considered and rejected. *Cotter*, 642 F.2d at 704-05. This Court remands this case to the ALJ to determine whether Plaintiff has nonexertional limitations.[10]

C.     **Appeals Council Review.**

Plaintiff further argues that the Appeals Council erred by denying his request for review after considering additional evidence submitted by Plaintiff, which was not initially before the ALJ and which Plaintiff alleges proves that the ALJ erred in his decision. The administrative review process is governed by Social Security Administration regulations, which permit the Plaintiff to submit to the Appeals Council "new and material" evidence that relates to the period on or before the date of the ALJ's hearing decision. *Matthews v. Apfel*, 239 F.3d 589, 591 (3d Cir. 2001); *see* 20 C.F.R. §404.970(b). Although the Appeals Council must consider the entire

---

by nonexamining physicians and psychologists based on their review of the evidence in the case record."

[10] As discussed above, if the ALJ concludes that Plaintiff has nonexertional impairments, the ALJ cannot rely on the Grids in his Step Five analysis.

record, including the "new and material" evidence, the submission of such evidence does not require the Appeals Council to grant review. *Id*. The Third Circuit has held that "evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence." *Id*.; *Emery v. Apfel*, 356 F.Supp.2d 530, 534 (E.D.Pa. 2005). Furthermore, "although evidence considered by the Appeals Council is part of the administrative record on appeal, it cannot be considered by [this Court] in making its substantial evidence review once the Appeals Council has denied review."[11]  *Matthews*, 239 F.3d at 593. Therefore, this Court cannot review the Appeals Council's decision to deny a request for review.

When Plaintiff seeks to rely on evidence not brought before the ALJ, this Court "may at any time [remand] additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. §405(g); *see Szubak v. Sec'y of HHS*, 745 F.2d 831, 833 (3d Cir. 1984) (recognizing that evidence first presented to a district court must not only be new and material, but also supported by Plaintiff's good cause for not having incorporated the new evidence into the administrative record).

Here, Plaintiff submitted to the Appeals Council on March 31, 2006 new evidence consisting of x-rays allegedly showing a healed over fracture deformity of the left tibia and fibula as well as arthritis of the left ankle joint. (Tr. 10, 144). Assuming Plaintiff's x-rays prove the arthritic conditions of his left leg, the x-rays may be material under 42 U.S.C. §405(g) (Sentence

---

[11] For purposes of judicial review by this Court, the "record" is the "evidence upon which the findings and decision complained of are based." 42 U.S.C. §405(g).

Six). *See Szubak*, 745 F.2d at 833 (holding that "§405(g) requires that to support a 'new evidence' remand...the materiality standard requires that there be a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination"). However, Plaintiff was given ample time to submit the x-rays, taken on July 13, 2005, to the ALJ for consideration. (Tr. 145). At Plaintiff's administrative hearing, on July 21, 2005, Plaintiff's attorney stated that the x-rays should be ready in "[t]wo weeks at most. They're already done. It's not that [the doctor] has to do a report on them. It's just a matter of sending us the readings." (Tr. 181). The ALJ delayed his decision and kept the record open for the submission of the x-rays for an additional 20 days. (T r. 15, 182-83). However, Plaintiff never submitted the x-rays. (Tr. 15). Although Plaintiff's x-rays were new and possibly material, Plaintiff showed no good cause in the failure to incorporate the x-rays into the administrative record. *See Matthews*, 239 F.3d at 595-96 (holding that evidence was "new and material" but Matthews failed to show good cause for not presenting the evidence despite the ALJ keeping the record open for the submission of the additional evidence). Therefore, on remand, the ALJ should not consider the x-rays submitted to the Appeals Council.

**V.    Conclusion.**

For the aforementioned reasons, and after careful review of the record in its entirety, the Court remands the ALJ's decision to deny Plaintiff SSI benefits to determine whether Plaintiff has nonexertional limitations. An appropriate order will issue.

/s/ Faith S. Hochberg

**Hon. Faith S. Hochberg, U.S.D.J.**